UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BABATUNDE IBRAHEEM AKARIGIDI,<br><br>Petitioner,<br><br>v.<br><br>WARDEN CLAY COUNTY JUSTICE CENTER, RUSSELL HOTT Acting Field Office Director of the Chicago Field Office, ) U.S. Immigration and Customs Enforcement, ) Enforcement and Removal Operations, *et al.*,<br><br>Respondents. | No. 2:26-cv-00582-JRS-MKK |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Babatunde Akarigidi's petition for a writ of habeas corpus seeks his release from the Clay County Jail, where he is detained at the direction of federal immigration officials. For the following reasons, the petition is granted in part.

**I. Facts**

Mr. Akarigidi is a Nigerian citizen and national. In 2024, an immigration judge ordered that he be removed from the United States but that—due to the Convention Against Torture—he may not be removed to Nigeria. Dkt. 9-1 at 21–24. There is no dispute that the removal order is administratively final.

In April 2024, U.S. Immigration and Customs Enforcement (ICE) released Mr. Akarigidi pursuant to an order of supervision (OSUP). *Id.* at 3; dkt. 1-3 at 2–4. Neither side contends that Mr. Akarigidi has violated the terms of the OSUP or that the government has taken action to revoke the OSUP.

In August 2026, ICE issued administrative warrants authorizing Mr. Akarigidi's arrest. Dkt. 9-1 at 25–27. The government surveilled and arrested Mr. Akarigidi in Illinois on August 13. *Id.* at 3. He remains in ICE detention.

ICE intends to remove Mr. Akarigidi to Sierra Leone on a "regularly planned" charter flight. Dkt. 9-3 ¶¶ 6–8. Mr. Akarigidi intends to bring legal challenges to that removal.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Akarigidi argues that his detention violates the Fifth Amendment's due process clause, the Immigration and Nationality Act (INA), the Administrative Procedure Act (APA), and the Foreign Affairs Reform and Restructuring Act (FARRA).

### A. Legality of Detention

Because Mr. Akarigidi is subject to a final removal order, his detention is governed by 8 U.S.C. § 1231. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. Akarigidi's continued detention is lawful under § 1231 as interpreted by *Zadvydas*. He has has been detained for roughly two months, so his detention is well within the six-month period of presumptive reasonableness. Moreover, Respondents report that they have identified a destination country and will remove Mr. Akarigidi on a regularly scheduled flight once this matter is resolved. Although Mr. Akarigidi states that he intends to challenge his removal to Sierra Leone,

nothing in the record indicates that any action has been taken in an immigration proceeding to prevent or stay his removal. In short, there is no basis for the Court to find that Mr. Akarigidi is not significantly likely to be removed in the reasonably foreseeable future.

To the extent Mr. Akarigidi asserts that his detention violates the due process clause, it fails for similar reasons. Practically, a § 1231 detainee's statutory and constitutional claims merge into one because "the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent § 241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). In short, there is no need for a separate due process analysis.

Any contention that Mr. Akarigidi cannot be lawfully removed to Sierra Leone or any other destination under FARRA or any other authority falls beyond the scope of this Court's review. A prisoner who seeks relief other than release from custody may have viable claims, but they may not be presented in a habeas corpus action. *Bunn v. Conley*, 309 F.3d 1002, 1007 (7th Cir. 2002). Further, under 8 U.S.C. § 1252(g), this Court may not hear claims based on decisions to "execute removal orders against any alien." *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention, but respondent invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this

country."). Mr. Akarigidi is subject to a final removal order, and Respondents have documented that they are prepared to execute that order. If Mr. Akarigidi wishes to challenge the legality of his removal to Sierra Leone, he must do so in an immigration proceeding, not a habeas corpus case.

**B. Revocation of OSUP**

The APA requires federal courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Respondents do not dispute Mr. Akarigidi's contention that the decision to detain him is an agency action subject to review under the APA.

"[T]he arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024). Meanwhile, the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), teaches "that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). "[I]t is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The core of *Accardi* is that the government may not "fail[] to exercise its own discretion" when valid regulations require it to do so. 347 U.S. at 268.

Department of Homeland Security regulations codify a procedure for revoking an OSUP and redetaining an alien subject to a final removal order. *See* 8 C.F.R. §§ 241.4(*l*), 241.13(*i*). The procedure includes notice, an informal interview, and opportunities to respond to the reasons for revocation and present evidence.

Mr. Akarigidi argues that the government failed to observe these procedures before detaining him and thereby violated the APA. Respondents do not argue otherwise. Therefore, it is undisputed that the government did not "do its homework" to revoke Mr. Akarigidi's OSUP, and it has not assembled a "satisfactory answer" for its failure to proceed according to its own rules. *Smith*, 103 F.4th at 1252. Under these circumstances, Petitioner's continued detention is arbitrary and capricious and violates the APA and *Accardi*.

While Respondents do not dispute that they violated their own procedures, they dispute that immediate release is the appropriate remedy for that violation. Rather, they argue, the proper remedy is to order compliance with the revocation process. Dkt. 9 at 8.

The Court agrees. "[T]he purpose of a habeas corpus action is not to compensate the petitioner for a past injury or punish the respondent for wrongdoing; it is solely to determine whether the petitioner's *current* detention is lawful." *Feliciano v. Warden*, No. 3:26-CV-1108-CCB-SJF, 2026 WL 2525659, at *3 (N.D. Ind. Aug. 26, 2026) (emphasis added) (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). Mr. Akarigidi's detention is authorized by § 1231 for the reasons discussed above. To the extent his detention is unlawful, it is unlawful because the government did not abide by its procedures for revoking his OSUP—not because the government lacks authority to detain him at all.

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). Respondents must afford Mr. Akarigidi the process to challenge the revocation of his OSUP. Because his detention is otherwise lawful under § 1231 and *Zadvydas*, however, the Court will not order his immediate release.[1]

---

[1] Because the Court finds that Mr. Akarigidi is entitled to this relief under the APA, it does not reach any argument that the government's failure to revoke his OSUP entitles him to any different relief under the due

### III. Conclusion

The petition for a writ of habeas corpus is **granted in part**. Respondents will have **through October 26, 2026**, to file documentation that (1) they have taken all necessary steps to revoke Mr. Akarigidi's OSUP according 8 C.F.R. §§ 241.4(*l*) and 241.13(*i*); or (2) he has been released from detention subject to the conditions of supervision previously in place under his OSUP. This order does not deprive Mr. Akarigidi of any right to oppose his removal through the appropriate channels or relieve the government of any obligation to hear such challenges.

The petition is otherwise **denied**.

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 10/19/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov

Beatriz Valdez
Valdez Law LLC
beatriz@valdezlawoffice.com

---

process clause. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").